190 N.J. Super. 168 (1983)
462 A.2d 603
TRUS JOIST CORPORATION, A CORPORATION OF THE STATE OF NEVADA, AND MATTHEW J. SCOLA, AS TRUSTEE OF THE ESTATE OF TREETOP ASSOCIATES, INC., BANKRUPT, PLAINTIFFS-APPELLANTS,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, INTERVENOR-RESPONDENT, AND TREETOP ASSOCIATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, LOG SCHOOL HOUSE ROAD CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, MACOPIN ASSOCIATES, A PARTNERSHIP, LEO FITZPATRICK A/K/A LEE FITZPATRICK, MICHAEL ANDERSON, JOHN RUSSIAN, WILLIAM BOWMAN AND J. MERRILL FITZPATRICK, DEFENDANTS, AND HUDSON CITY SAVINGS BANK, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1983.
Decided June 10, 1983.
*170 Before Judges MORTON I. GREENBERG and FURMAN.
Jeffrey W. Herrmann argued the cause for appellants (Cohn & Lifland, attorneys; Daniel Crystal and Jeffrey W. Herrmann, on the brief).
*171 John J. Byrne, III, argued the cause for respondent (Cole, Geaney, Yamner & Byrne, attorneys; John J. Byrne, on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
This appeal involves another chapter in this protracted litigation, the disposition of which requires an extended opinion by this court.
On April 18, 1977 Trus Joist Corporation filed this action in the Superior Court, Chancery Division, Passaic County, against Treetop Associates, Inc., a New Jersey corporation, Macopin Associates, a partnership, Leo Fitzpatrick, John Russian, Michael Anderson and William Bowman.[1] In material part the complaint alleged that Trus Joist on or about April 25, 1975 had filed an action against Treetop in the Superior Court, Law Division, Passaic County, on a book account for goods delivered seeking a judgment for $21,600.95. The Law Division case was settled on April 2, 1976 for $16,000 but the $16,000 was not paid. Thus on September 17, 1976 in the Law Division action Trus Joist moved for and obtained a summary judgment against Treetop for $16,000 plus interest from April 2, 1976. The Chancery Division complaint further alleged that between April 2, 1976 and September 17, 1976 numerous creditors of Treetop obtained judgments against Treetop having priority over the Trus Joist judgment. Trus Joist further set forth in the Chancery Division complaint that on or about May 23, 1974 Treetop conveyed certain lands in Bloomingdale, Passaic County, to Macopin, a partnership in which Fitzpatrick, Russian, Anderson and Bowman each had a one-quarter interest. Trus Joist asked for judgment that the conveyance "be declared void" and its *172 judgment be declared to be a lien on the premises. This relief was sought on the basis that the conveyance was fraudulent, rendered Treetop insolvent and was made without fair consideration when Treetop was about to engage in a business for which the property remaining in its hands after the conveyance constituted an unreasonably small capital. Trus Joist further charged the conveyance was made when Treetop intended to incur debts beyond its ability to pay as they matured.
On May 13, 1977 Trus Joist filed a lis pendens in the Chancery Division action. The lis pendens described the object of the action to have the deed from Treetop to Macopin declared void as a fraudulent conveyance. The lis pendens stated that it was the further object of the action to have the Trus Joist judgment against Treetop declared a lien on the property.
The pendency of the litigation including an assault on its title did not deter Macopin from alienating the property. In the summer of 1977 Macopin sought to mortgage the premises to the National Union Fire Insurance Company of Pittsburgh, Pennsylvania. At that time Commonwealth Land Title Insurance Company made a title search preparatory to guaranteeing National Union's title. The search revealed the lis pendens which Commonwealth viewed as a cloud on Macopin's title. Commonwealth's representative then reviewed the complaint in the Chancery Division action. He recognized that the complaint sought to set aside the conveyance by Treetop to Macopin. Nevertheless Commonwealth thought it obvious that the gravamen of the complaint was recovery of the debt owed by Treetop. Thus Commonwealth agreed to insure the title of National Union to the proposed mortgage without an exception for the lis pendens provided $18,000 was held in escrow by Commonwealth. The additional $2,000 covered a judgment against another defendant not directly involved on this appeal. The escrow would guarantee satisfaction of the Trus Joist claim if Trus Joist were successful in the Chancery Division action.
*173 The Commonwealth search also revealed other liens on the premises including a first mortgage held by Hudson City Savings Bank and a second mortgage held by John and Ann Dvorak. Both of these mortgages were in default and foreclosure proceedings had been started for the Hudson City mortgage.
It is apparent that the preliminary certificate and report on title was satisfactory to National Union. Thus on September 9, 1977 National Union granted Macopin a $325,000 mortgage which on that day was recorded in Passaic County. Commonwealth distributed the money through its escrow account. The two largest disbursements of the loan proceeds were $123,704.98 to Paul Soleman, attorney for the Dvoraks, to pay off their mortgage, and $52,801.50 to the Hudson City Savings Bank, in partial payment of its mortgage. On or about September 9, 1977 Commonwealth issued its policy insuring National Union.
On February 24, 1978 an amended complaint was filed in the Chancery Division case. In this amended complaint Matthew J. Scola, as trustee in bankruptcy of Treetop joined as a party plaintiff. The amended complaint indicated that on or about June 30, 1977 Treetop had filed a petition in bankruptcy in the United States District Court in New Jersey, on July 19, 1977 Scola was appointed its trustee and on November 23, 1977 Scola was authorized to join in this action as plaintiff to set aside the fraudulent conveyance. Scola sought an order setting aside the conveyance on behalf of the estate of Treetop for the benefit of all its creditors.
National Union by accepting a mortgage from Macopin at a time when the conveyance to it from Treetop was being challenged took security that was in jeopardy of being invalidated.[2] To protect its interest it moved for leave to intervene in this litigation. On June 26, 1978 Judge Ciolino signed an order granting this motion. National Union then filed a complaint seeking an order declaring its mortgage to be a valid second lien *174 on the premises subject only to the mortgage of Hudson City. Notwithstanding this intervention the litigation then went forward without an initial determination of whether the National Union mortgage was valid.
The action was decided by Judge Ciolino in a letter opinion dated January 8, 1979. In his letter opinion Judge Ciolino found that Fitzpatrick and Anderson were the only shareholders of Treetop and that Fitzpatrick, Anderson, Russian and Bowman were the partners in Macopin. The judge then reviewed the facts as developed at length. Ultimately he concluded that: "The conveyance from defendant Tree Top Associates, Inc. to defendant Macopin Associates is declared void as being made without fair consideration, not in good faith, and in violation of the fiduciary obligations due to creditors." A formal order for judgment reflecting this opinion was filed January 23, 1979.[3] Treetop appealed from this order and on January 19, 1981 we affirmed the judgment substantially for the reasons expressed by Judge Ciolino in his letter opinion.[4] In neither the opinion nor judgment of Judge Ciolino nor in our decision on the appeal was any determination made as to the validity of the National Union mortgage.
Following our opinion on the original appeal in this case Trus Joist and the trustee moved twice to set aside the lien of the National Union mortgage. Their first motion was denied without prejudice by order dated October 8, 1981. National Union served a cross-motion seeking a summary judgment declaring its mortgage to be valid with a second lien priority. The matter was decided by Judge Dwyer in a lengthy letter opinion dated January 8, 1982. He determined under federal law that the trustee could recover property transferred by the debtor (Treetop) *175 unless the transfer was valid under federal or state law. He then indicated that Treetop had the legal capacity and ability to convey the property to Macopin and that "[w]here the legal title is in a transferee and a third party pays consideration and acquires an interest in good faith, or bona fide, the innocent third party prevails over the rights of the creditors of the original debtor-grantor." He pointed out that under N.J.S.A. 25:2-15 a creditor with a matured claim may have the conveyance set aside or the obligation annulled to the extent necessary to satisfy his claim. He indicated that National Union was not obliged to investigate beyond the notice given in the lis pendens. Ultimately the judge determined that since National Union did not have actual knowledge of fraud in the transaction between Treetop and Macopin its mortgage should be deemed valid. However the judge allowed Trus Joist and the trustee 20 days to file affidavits showing that National Union had knowledge of the fraud. No such affidavits were filed. Thus on February 5, 1982 the judge signed an order for summary judgment declaring the National Union mortgage to be valid but ordering the $16,000 held in escrow from the closing as a result of the judgment against Macopin to be paid to the trustee. Trus Joist and the trustee have appealed from that order.[5]
We are satisfied that the mortgage from Macopin to National Union was invalid. It is clear from Judge Ciolino's opinion that he found the conveyance from Treetop to Macopin invalid under N.J.S.A. 25:2-11, a section of the Uniform Fraudulent Conveyances Act, N.J.S.A. 25:2-7, et seq. That section provides as follows:
Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital is fraudulent as to creditors and as to other persons who become creditors *176 during the continuance of such business or transaction without regard to his actual intent.
A conveyance under the uniform act includes a mortgage. N.J.S.A. 25:2-7.
When a conveyance is fraudulent as to a creditor under the Uniform Fraudulent Conveyances Act the creditor may as against any person "except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase" disregard the conveyance and levy on the property or have the conveyance set aside to the extent necessary to satisfy his claim. N.J.S.A. 25:2-15.
This rule with respect to creditors' rights was similar in New Jersey even before the adoption of the Uniform Fraudulent Conveyances Act. Under N.J.S.A. 25:2-3 any conveyance in fraud of creditors is "utterly void and of no effect...." However any subsequent conveyance or mortgage by the grantee in a fraudulent conveyance made for a good consideration and bona fide, to any person not having, at the time of such conveyance or mortgage, any notice or knowledge of the fraud is valid. N.J.S.A. 25:2-5.
Here there is no question at all but that Commonwealth on behalf of National Union had actual knowledge that it could be accepting a mortgage from a fraudulent grantee. A representative of Commonwealth read the complaint charging that the Treetop-Macopin deed was fraudulent. We recognize, of course, that the lis pendens was filed only on behalf of Trus Joist and that Commonwealth received an escrow against the Trus Joist claim. But that limitation is not dispositive of the inquiry into the validity of the mortgage. The crucial question was whether the mortgagee had knowledge of the fraud when it accepted the mortgage. It clearly did. Further it does not matter how National Union received notice. This actual knowledge of the fraud precluded it from securing the protection afforded by N.J.S.A. 25:2-15 and N.J.S.A. 25:2-5 to bona fide mortgagees. See 37 C.J.S., Fraudulent Conveyances, § 298 at 1132 ("A purchaser *177 has been held to have sufficient notice to prevent him from claiming as a bona fide purchaser ... where he purchases with notice that proceedings are pending to set aside the former conveyance as fraudulent and to subject the property to a judgment against the original grantor....")
There is no doubt but that both Trus Joist and the trustee have standing to bring an action to have the mortgage declared invalid. The Trus Joist action was pending when National Union accepted the mortgage. By filing its lis pendens Trus Joist insured that National Union would receive constructive notice of its complaint. In fact National Union obtained actual notice of it as well.
The trustee's position is governed by federal law. The Treetop bankruptcy petition was filed June 30, 1977 and Scola was appointed its trustee July 19, 1977. Under section 70(e) of the Bankruptcy Act of 1898[6] a transfer made by a debtor adjudicated to be a bankrupt which under state law is fraudulent or voidable for any other reason by any creditor of the debtor having a claim provable in bankruptcy is null and void against the trustee of the debtor. 11 U.S.C.A. § 110(e) (repealed). Thus the National Union mortgage is void as against both Trus Joist and the trustee.
National Union points out that the trustee is subrogated to the rights of the creditors but that these rights are established by state law. It asserts that the creditors are guilty of laches because the amended complaint challenging the validity of its mortgage was filed about six months after the mortgage was closed. It argues that the complaint on behalf of the creditors should not relate back to the original Trus Joist complaint. *178 National Union would impute the alleged laches of the creditors to the trustee.
We reject this laches defense. Laches is a defense only where there is a delay, unexplained or inexcusable, in enforcing a known right in circumstances in which the delay causes prejudice to another party. See In re Meadowlands Communications Systems, Inc., 175 N.J. Super. 53, 63 (App.Div.), certif. den. 85 N.J. 455 (1980). In this case National Union received its mortgage on September 9, 1977. The amended complaint was filed on February 24, 1978. Certainly National Union can point to no fact prejudicing it from this short delay by the trustee.
In reality the claim of laches by National Union is based on the failure of the creditors (other than Trus Joist) or the trustee to bring an action challenging the Treetop-Macopin deed before National Union closed its mortgage. In effect National Union claims prejudice because an action was not brought against other parties. We reject this contention. National Union should attribute the invalidation of its mortgage not to the creditors' neglect but rather to the surprising willingness of Commonwealth to insure the mortgage in the face of a complaint charging the mortgagor (Macopin) with having an invalid title.
National Union asserts that it is entitled to equitable subordination to the full extent of its loan so that it will have a valid second mortgage on the premises. It maintains that if it had not made its loan Hudson City would have foreclosed its mortgage and that there would have been valid liens against the mortgaged property which were on record prior to the lis pendens being filed on behalf of Trus Joist. These liens survived the invalidation of the Treetop-Macopin deed. We are impressed with this argument. No matter how reckless Commonwealth may have been in insuring the National Union mortgage the fact remains that there was at least one lien on record against the property with priority over the rights of the creditors of Treetop, including Trus Joist. This was the Hudson *179 City mortgage which was partly satisfied from the proceeds of the National Union mortgage. There may have been other valid liens satisfied from the National Union mortgage as well. At oral argument we were advised that the validity of the Dvorak mortgage has not been challenged.
There is no doubt that a mortgagee who negligently accepts a mortgage without knowledge of intervening encumbrances will subrogate to a first mortgage with priority over the intervening encumbrances to the extent that the proceeds of the new mortgage are used to satisfy the old mortgage. This result is reached so that the holders of the intervening encumbrances not be unjustly enriched at the expense of the new mortgagee. See 29 N.J. Practice (Cunningham & Tischler, Mortgages) (1975) § 147 at 675. On similar principles National Union is entitled to subrogate to the rights of the persons whose liens and encumbrances were satisfied in whole or in part from the proceeds of its loan secured by the mortgage. The fact that National Union was aware of the challenge to Macopin's title does not require a different result, particularly since National Union did not participate in the fraudulent conveyance. See Graves v. Winans, 4 Atl. 645, 649 (N.J.Ch. 1886) (not officially reported), rev'd on other grounds 43 N.J. Eq. 263 (E. & A. 1887); Lynch v. Burt, 132 Fed. 417, 432-433 (8 Cir.1904). Nothing in N.J.S.A. 25:2-15 providing that a fraudulent conveyance may be disregarded by a creditor with a matured claim deals specifically with the factual circumstances, as here, that the person acquiring an interest from a fraudulent grantee though not a bona fide purchaser has paid value for the property and has satisfied liens on the property with priority over the creditor. See also N.J.S.A. 25:2-5. In the circumstances we reach the equitable result, not foreclosed by statute, that to the extent the proceeds of the National Union loan were used to satisfy in whole or in part liens and encumbrances with priority over the claims of Trus Joist and the trustee against the mortgaged property, the National Union mortgage is enforceable.
*180 On the record before us we cannot determine exactly which of the disbursements made from the proceeds of the loan were for claims with priority over the claims of Trus Joist and the trustee. Thus a remand will be required. It appears that the payments of $52,801.50 to Hudson City and $123,704.48 to the attorney for the Dvoraks on their behalf would have such priority. On the other hand $29,381.31 from the closing was disbursed to Matthew J. Trella as attorney for Macopin. This payment was described in an affidavit submitted on behalf of National Union as "Remaining proceeds of mortgage loan for unsecured creditors and working capital." Undoubtedly if this description was accurate the mortgage at least to the extent of $29,381.21 is invalid. The record reflects a payment of $21,225 to National Homes Acceptance Corp., a mortgage servicing agent, on behalf of Hudson City and National Union. To the extent that this payment was applied on the first mortgage the portion of the National Union loan supplying the funds for it has priority over the claims of Trus Joist and the trustee.
We note that certain of the disbursements from the mortgage were for the expenses of closing the mortgage. We hold that these expenses should be allocated on a ratio identical to the allocation of the other disbursements from the closing. To the extent that a given percentage of the disbursements of the mortgage, excluding the costs of the closing, are valid, the same percentage of the expenses shall be valid.
The order of February 5, 1982 is reversed. This matter is remanded to the Superior Court, Chancery Division, Passaic County, for further proceedings not inconsistent with this opinion. Specifically the trial judge shall determine the extent that the mortgage is enforceable on the principles of subrogation announced herein. When this determination is made he shall *181 equitably recast the remaining portion of the mortgage. We do not retain jurisdiction.[7]
NOTES
[1] Russian and Anderson were erroneously referred to as "Rischer" and "Andercone." In an amended complaint the spellings were corrected. There were other defendants in this litigation but they need not be referred to in this opinion.
[2] Subject, of course, to its protection from Commonwealth.
[3] The letter opinion and judgment disposed of issues not germane to this appeal.
[4] We also dealt with certain procedural issues not germane to this appeal. The Supreme Court subsequently denied a petition for certification.
[5] The order also upheld the validity of the Hudson City mortgage. The notice of appeal is from that portion of the order as well but plaintiffs have not briefed the issue. At oral argument we were advised that they had abandoned the point.
[6] The Bankruptcy Code of 1978 became effective October 1, 1979. See Pub.L. No. 95-598, § 402; 92 Stat. 2682. The bankruptcy proceedings in the Treetop case were thus governed by the 1898 statute. See Pub.L. No. 95-598 § 403; 92 Stat. 2683.
[7] Nothing herein contained shall affect the order of February 5, 1982 insofar as it declared the Hudson City mortgage a valid first lien on the premises or ordered the $16,000 held in escrow to be paid to the trustee.