TRUS JOIST CORPORATION, A CORPORATION OF THE STATE OF NEVADA, AND MATTHEW J. SCOLA, AS TRUSTEE OF THE ESTATE OF TREETOP ASSOCIATES, INC., BANKRUPT, PLAINTIFFS-RESPONDENTS, AND CROSS-APPELLANTS, AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, INTERVENOR-APPELLANT AND CROSS-RESPONDENT, v. TREETOP ASSOCIATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, LOG SCHOOL HOUSE ROAD CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, MACOPIN ASSOCIATES, A PARTNERSHIP, LEO FITZPATRICK, A/K/A LEE FITZPATRICK, MICHAEL ANDERSON, JOHN RUSSIAN, WILLIAM BOWMAN, AND J. MERRILL FITZPATRICK, DEFENDANTS, AND HUDSON CITY SAVINGS BANK, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.

Argued March 20, 1984—Decided July 12, 1984.

24

*John J. Byrne, III,* argued the cause for intervenor-appellant and cross-respondent and defendant-appellant and cross-respondent (*Cole, Geaney, Yamner & Byrne,* attorneys; *John J. Byrne, III* and *Michael J. Sweeney,* on the brief).

*Jeffrey W. Herrmann* argued the cause for respondents and cross-appellants (*Cohn & Lifland,* attorneys; *Jeffrey W. Herrmann* and *Daniel Crystal,* on the briefs).

PER CURIAM.

This case concerns the notice afforded by the filing of a *lis pendens*. Specifically, the issue is whether the suit of a trustee in bankruptcy to set aside a mortgage may be related back to the prior filing of a notice of *lis pendens* by one creditor. The effect would be to invalidate the mortgage in favor of all other creditors, not just the creditor listed in the *lis pendens*, when the mortgagee has notice of the claim by that creditor of an alleged fraudulent conveyance as to it involving the disputed property. We hold that the effect of a notice of *lis pendens* in this context is limited to preservation of the rights of the party filing it. Accordingly, we reverse the judgment of the Appellate Division.

The factual and procedural background is complex. The first phase of litigation concerned whether a conveyance of the real estate was fraudulent. The second phase, our focus today, concerns the validity of a mortgage given on the disputed land. Although the first issue has been decided, we focus on the factual elements from both issues necessary to resolve the question before us.

The case concerns the development of a 116-unit garden apartment site in Bloomingdale. A development company, defendant Treetop Associates, Inc. (Treetop), acquired the site in 1974. It shortly thereafter conveyed title to Macopin Associates (Macopin), a closely-related partnership. Macopin obtained mortgage financing from the Hudson City Savings Bank to develop the project and hired Treetop as the general contractor.

Plaintiff Trus Joist Corporation (Trus Joist) supplied materials to Treetop to construct the project, but was never paid. It recovered a judgment against Treetop in September 1976 for $16,000. The judgment was not satisfied by Treetop. The dates of the following events now become critical.

*April 18, 1977:* Plaintiff Trus Joist commenced suit in the Chancery Division, alleging that the conveyance from Treetop to Macopin was fraudulent, and was designed to insulate the property from claims for labor and materials furnished to Treetop in connection with the project. The suit sought to have the

conveyance declared void and to have the $16,000 judgment declared as a lien on the property.

*May 13, 1977:* Trus Joist filed a *lis pendens* against the premises giving notice of the above.

*June 30, 1977:* Defendant Treetop filed a voluntary petition in bankruptcy in United States District Court in New Jersey. Its trustee took no action against Macopin, and therefore did not file a notice of *lis pendens* asserting an interest in the Macopin property.

*September 8, 1977:* National Union Fire Insurance Company of Pittsburgh (National Union) loaned Macopin $325,000 to be secured by a mortgage on the garden apartments. This mortgage was recorded on September 9, 1977. In searching the title, National Union found Trus Joist's notice of *lis pendens,* and set aside an escrow of $16,000 to satisfy the judgment if Trus Joist succeeded.[1] The mortgage was used to pay off some outstanding creditors, including making current the first mortgage of Hudson City Savings Bank on which the bank threatened to foreclose, and payoff of an earlier second mortgage.

*November 23, 1977:* Treetop's trustee was authorized to prosecute the claim of Trus Joist against the partnership, Macopin, and to represent other creditors with claims against Treetop.

*February 24, 1978:* The trustee joined Trus Joist in filing an amended complaint to set aside the deed to Macopin. National Union was not named in that suit, and the notice of *lis pendens* was not changed to reflect the amended complaint.

In January 1979, trial began. The court tried separately the issues of (1) whether the conveyance from Treetop to Macopin was fraudulent, and (2) whether the National Union mortgage was valid. On the first issue, the trial court agreed with Trus Joist and the trustee that the conveyance to Macopin was given without fair consideration and that it was fraudulent. On appeal, the Appellate Division affirmed. This Court denied certification on March 23, 1981, ending the first phase of litigation.

Following that judgment, Trus Joist and the trustee moved to set aside the National Union mortgage, because the mortgage's priority ahead of creditors could jeopardize or delay payment to

---

[1]The total escrow was $18,000, covering the $16,000 judgment against Treetop and another $2,000 judgment against Log School House Road Corporation, a related defendant. For convenience, we refer only to Treetop.

Treetop's creditors. National Union sought a determination of the validity of its mortgage.[2]

The trustee argued that since the *lis pendens* gave notice of an alleged fraudulent conveyance, National Union was obliged to make direct inquiries of Trus Joist, and to continue investigation of Treetop's status after the 1974 divestiture of title in search of the later bankruptcy petition. It would thus be put on notice of the trustee's claimed right as one having the status of a judgment creditor under Section 70(e) of the Bankruptcy Act of 1898[3] to set aside the conveyance. The trial court rejected this argument, finding that the *lis pendens* inured only to the benefit of the party listed as filing suit—Trus Joist—and

---

[2]National Union sought only second lien status behind the $1,650,000 first mortgage of Hudson City Savings Bank that it had caused to be made current. The trustee conceded that mortgage's validity.

[3]The Bankruptcy Code of 1978 became effective October 1, 1979. *See Pub.L.* No. 95–598, 92 *Stat.* 2549. The bankruptcy proceedings in the Treetop case were thus governed by the earlier statute. *See Pub.L.* 95–598, § 403(a), 92 *Stat.* 2683. Section 70(e) of the prior law provided:

(1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor.

(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate: *Provided, however,* That the court may on due notice order such transfer or obligation to be preserved for the benefit of the estate and in such event the trustee shall succeed to and may enforce the rights of such transferee or obligee. The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whoever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision is valid under applicable Federal or State laws.

(3) For the purpose of such recovery or of the avoidance of such transfer or obligation, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction.

for none other. It also held that conveyancing practice did not require a search against the grantor after title transfer. There being no contention that National Union had actual knowledge of the fraud, it found the *lis pendens* gave no constructive notice of the claims of other creditors represented by the trustee. It upheld the National Union mortgage.

The Appellate Division reversed on this issue. 190 *N.J.Super.* 168 (1983). In its view there was no question that National Union had actual knowledge that it could be accepting a mortgage from a fraudulent grantee. Its title searcher had read the *lis pendens* and knew of the claim. It found irrelevant the fact that Trus Joist's rights were preserved by the escrow. It held that the trustee had, under Section 70(e) of the Bankruptcy Act of 1898, the same rights as any other creditor under state law. It viewed the rights of such a creditor as relating back to the filing of the first *lis pendens,* although it nevertheless allowed equitable subrogation of National Union "to the rights of the persons whose [prior valid] liens and encumbrances were satisfied in whole or in part from the proceeds of its [past] loan secured by the mortgage." *Id.* at 179. It therefore held National Union's mortgage partially invalid. We granted the petitions of both parties to review that judgment. 96 *N.J.* 257 (1983).

## I.

Both parties agree that the trustee's rights derive from Section 70(c) of the Bankruptcy Act of 1898, 11 *U.S.C.A.* § 110(c). Under that provision the trustee is deemed to have the rights of a judgment creditor under state law. Trus Joist and the trustee point to our fraudulent conveyancing laws to support their claim that the National Union mortgage must be set aside.

New Jersey has two statutes governing fraudulent conveyances—the Fraudulent Conveyances Act, *N.J.S.A.* 25:2-1 to –6, and the Uniform Fraudulent Conveyance Act, *N.J.S.A.*

25:2–7 to –19. In the event of inconsistency the latter statute controls. *Smith v. Whitman,* 75 *N.J.Super.* 228, 236 (App. Div.), modified on other grounds, 39 *N.J.* 397 (1962). Trus Joist and the trustee rely upon the language in *N.J.S.A.* 25:2–3 that any conveyance in fraud of creditors is "utterly void and of no. effect." Thus they argue that since the deed from Treetop to Macopin was to insulate Treetop from creditors, Macopin had no title and National Union has no mortgage.

 But the creditor's rights are limited. Under the Uniform Fraudulent Conveyance Act, the creditor may only disregard the conveyance and levy on the property "to the extent necessary to satisfy his claim," and then not as against a subsequent purchaser or mortgagee who acquires title for fair consideration *"without knowledge of the fraud at the time of the purchase."* *N.J.S.A.* 25:2–15 (emphasis added). *N.J.S.A.* 25:2–5 gives equivalent protection, stating that "no mortgage, made bona fide and without fraud or covin, and upon good consideration, shall be impeached or impaired by this article, but every such mortgage shall have like force and effect as if this article had never been in effect."

The question remains whether National Union had "knowledge of the fraud," *N.J.S.A.* 25:2–15, which would erase its status as a subsequent purchaser for value. The pivotal issue, then, is the precise extent of the notice contained in the *lis pendens.* In other words, of what did the *lis pendens* inform National Union? Did it give notice of Trus Joist's claim alone, or did it give notice of Treetop's questionable status and require that National Union search further for other creditors or for bankruptcy proceedings?

## II.

 Under the *lis pendens* statute, *N.J.S.A.* 2A:15–6, a claimant seeking to enforce a lien, other than a mechanic's lien, upon real estate shall, after the filing of the complaint, file in the record office of the county a written notice of the pendency

of the action, which shall set forth the title and general object of the suit, as well as a description of the affected real estate. The effect of the filing of a notice of *lis pendens* is constructive notice of a pending action concerning that real estate, and a purchaser or mortgagee takes subject to the outcome of the lawsuit. *N.J.S.A.* 2A:15-7. It is not correct to state that the purpose of the *lis pendens* statute is to provide any other notice.

> The doctrine of *lis pendens* is an application of the maxim, *"pendente lite nihil innovatur."* *Kocher,* [Pleading and Practice in the Court of Chancery of New Jersey, C. XIX (1913)] at 335.
>
>> The principle [of *lis pendens*] has been regarded as not essentially one of constructive notice, but of policy, the necessity for preserving the subject matter of the litigation, the feeling that otherwise litigation would never come to an end, that it would be at the pleasure of one party to determine when the litigation would end, that all suits might be rendered abortive by successive alienation of property, that litigants should not be permitted to affect rights in dipute [sic] while the controversy was pending, and that the court is entitled to proceed to the final exercise of jurisdiction without hindrance from parties. [*Wendy's of So. Jersey, Inc. v. Blanchard Management Corp.,* 170 *N.J.Super.* 491, 496-97 (Ch.Div.1979) (citing 2 *Lawrence, Equity Jurisprudence* § 716 at 800 (1929), and *Kocher, supra,* at 335).]

In *Chrysler Corp. v. Fedders Corp.,* 519 *F.Supp.* 1252 (D.N.J.1981), involving a due-process challenge to the doctrine of *lis pendens,* Judge Ackerman reviewed the history of the doctrine from the 17th century. At common law the simple filing of the lawsuit served as the effective notice to the world that any rights acquired from the parties would be subject to the outcome of the suit. The common-law doctrine was changed to require that a notice of *lis pendens* be filed in order for there to be constructive knowledge and a subordination of any purchaser's rights to a plaintiff's. *Wendy's of So. Jersey, Inc., supra,* 170 *N.J.Super.* at 496. But the core of the doctrine remained the same:

> According to the Professors Pomeroy (father and son): "... the general rule may be accurately formulated as follows: During the pendency of an equitable suit, neither party to the litigation can alienate the property in dispute, so as to affect the rights of his opponent. This brief proposition in reality contains the entire doctrine." Pomeroy, *A Treatise on Equity Jurisprudence,* § 633, Vol.

II, p. 1216 (4th Ed. 1918) *citing Turner v. Houpt* [53 *N.J.Eq.* 526 (Ch. 1895) ]. [*Chrysler, supra,* 519 *F.Supp.* at 1260.]

It was precisely this vise-like grip upon the property, freezing the *status quo,* that rendered the statute unconstitutional in the view of Judge Ackerman: "[A] *lis pendens* is a taking of property that can only be accomplished constitutionally if the requirements of due process are met." *Id.* On appeal, the Third Circuit agreed that the notice of *lis pendens* involved a taking, but vacated the district court judgment by holding that the procedures were adequate to protect the interests of the parties. 670 *F.*2d 1316 (1982). Since a notice of *lis pendens* may be seen as a form of taking, we should be reluctant to allow the notice to have an effect greater than what the parties claim in the litigation.

In *Turner v. Houpt,* 53 *N.J.Eq.* 526 (Ch. 1895), rev'd on other grounds, 55 *N.J.Eq.* 593 (E. & A. 1897), Vice-Chancellor Pitney reviewed prior precedent exhaustively in determining whether a new and amended claim of fraud could be related back to the date of the original filing of the notice of *lis pendens.*

The original complaint alleged only that the defendants misrepresented the amount of encumbrances; the amended complaint alleged that they misrepresented the acreage involved as well as the value of improvements. A purchaser taking title to the premises between the original and amended complaint argued that, having only notice of the facts in the original complaint, he took free of any claim other than that encumbrance. Vice-Chancellor Pitney, in rejecting the argument, pointed out that the amendment involved the same parties and merely expanded upon the original complaint for fraud by adding specific instances. The court emphasized that the notice of *lis pendens* "does not provide for any notice of the facts"; a purchaser can expect to know only "that a suit is pending against a *certain party, affecting certain lands* in a *certain way.*" *Turner v. Houpt, supra,* 53 *N.J.Eq.* at 556 (emphasis in original).

■ Simply put, the test of when new matters may be related back to an earlier notice of *lis pendens* is: "[1] Are the parties the same, [2] the property to be affected the same, and [3] the general purpose and subject of the suit the same?" *Id.* at 557.

■ In this case the only factor common to the two actions is the property. Both the first and third factors are different: the trustee seeks to represent creditors other than Trus Joist, and on different claims. The notice of *lis pendens* served its historic and statutory function of preserving the rights of Trus Joist. The new matters the trustee asserts do not relate back.

■ Naturally, any judgment creditor who made a claim against Macopin and filed a *lis pendens* would have a priority under the Recording Act, *N.J.S.A.* 46:22–1 to –2, as does Trus Joist. But an unrecorded interest in the property will be cut off by a subsequent conveyance without notice.[4] *Cf. Schwartz v. Grunwald*, 174 *N.J.Super.* 164 (Ch.Div.1980) (filing *lis pendens* before claim invalid to give notice).

■ The question then is simply this: does the Trus Joist *lis pendens* give notice to a subsequent mortgagee of the claims of other creditors that may be related back in time to the date of the *lis pendens*. We hold that it does not. When searching the record, National Union was apprised only of a possible fraudulent transfer as to Trus Joist some three years prior to the granting of the mortgage. Neither the written notice of *lis pendens* nor Trus Joist's complaint was amended before the mortgage closing to refer to Treetop's voluntary petition in bankruptcy. It is impractical to hold that the allegation of

---

[4] A mortgagee is regarded as a subsequent purchaser for value under both the Uniform Fraudulent Conveyance Act, *N.J.S.A.* 25:2–15, *see Hollander v. Gautier*, 114 *N.J.Eq.* 485 (Ch.1933), and the Recording Act, *N.J.S.A.* 46:22–1 to –2. Further, the Recording Act has consistently been interpreted as requiring a search of the *grantee's* title only from the date the property is acquired. *See Security Pacific Finance Corp. v. Taylor*, 193 *N.J.Super.* 434 (Ch.Div.1984) (subsequent mortgagee not required to search alphabetical index of mortgagors prior to date of grantee's acquisition of property).

fraud placed a burden on National Union to continue to search against grantor-Treetop to find out if bankruptcy proceedings had been instituted *after* the 1974 conveyance, and even after the notice of *lis pendens* had been filed.

### III.

We believe that this holding will also serve the broader needs of our conveyancing laws. The Legislature responded to the constitutional concerns and altered the *lis pendens* procedure. By a 1982 amendment, *N.J.S.A.* 2A:15–7 now provides that, except as to claims based on a written instrument specifically describing the property, any party affected by a *lis pendens* notice may seek an advance judicial determination whether the claimant has a probability of succeeding in the action. The court must determine within ten days whether the claimant has met its burden of showing that "there is a sufficient probability of final judgment" in its favor, and shall discharge the notice if that burden is not met. *L.*1982, *c.* 200. *See* Note, *Lis Pendens: A Legislative Response to a Judicial Invitation,* 7 *Seton Hall Legis.J.* 59 (1983).

Should the court not discharge the notice, except in mortgage foreclosures, the affected property owner may have the real estate discharged from the claim by posting a bond. *N.J.S.A.* 2A:15–15. These related provisions can be best managed if the notice of *lis pendens* is confined to its terms in the sense outlined in *Turner v. Houpt, supra,* 53 *N.J.Eq.* 526. By requiring the filing of the notice of *lis pendens* in "the office of the county clerk or register of deeds and mortgages," *N.J.S.A.* 2A:15–6, the Legislature intended such notice to be given through our recording system:

> Real estate title records must be clear and certain. A notice of *lis pendens* should lead a title searcher to the underlying suit papers, readily found in the office of the clerk of the court, from which the nature of the pending litigation may be ascertained. A complaint which claims a 5% interest in a tract of land may call for a different reaction than one which seeks specific performance of an agreement for its sale. [*Schwartz v. Grunwald, supra,* 174 *N.J.Super.* at 169, 171–72.]

Limiting the notice of *lis pendens* to its terms will also foster certainty in land transactions. To hold otherwise would add confusion in credit transactions and indeed disturb the flow of credit by interfering with well-known business procedures. *See Puritan Dairy Products Co. v. Christoffers,* 54 *N.J.Super.* 102, 107 (Ch.Div.1959) (subordinating federal lien filed after notice of *lis pendens* or mortgage foreclosure proceedings). Would anyone lend $325,000 of new money if notice of a $16,000 lien could invalidate the entire transaction?

In this case the credit provided by National Union averted foreclosure of the first mortgage. We have been informed that during the pendency of the bankruptcy proceedings the property appreciated in value to the extent that general creditors have been paid 100 cents on the dollar.

Who then would benefit from invalidating the National Union mortgage? Not the creditors of Treetop; rather, only Southmark Properties, the purchaser of the bankrupt's estate. It bid in the estate's assets for $2,320,510, and took title to the apartment project subject to the first mortgage and the continued litigation over this second mortgage.[5] Although the sale to Southmark took place in May 1982, the Appellate Division was apparently not informed of its terms. This Court was informed of these matters only by information furnished from National Union. The plaintiffs purported to amend the caption of the proceedings in this Court without leave of court. Trus Joist and the trustee had no right to continue these proceedings before us. Southmark was not granted leave to amend the pleadings.

We hold that the new matters set forth in the trustee's amended complaint of February 1978 do not relate back to the

---

[5]Indeed, if the Trus Joist lien had been satisfied and not provided for by escrow when the National Union mortgage was made, there would have been nothing of record and the bankruptcy trustee's claim would clearly have been subordinate to National Union's prior mortgage.

May 1977 *lis pendens*, and that the September 1977 mortgage of National Union is valid as against the stated claims of the trustee. The judgment of the Appellate Division is reversed. The judgment of the Chancery Division is reinstated.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.