**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1971-17T4

WILMINGTON SAVINGS FUND
SOCIETY, FSB, DOING BUSINESS
AS CHRISTIANA TRUST, NOT IN
ITS INDIVIDUAL CAPACITY,
BUT SOLEY AS TRUSTEE FOR
BCAT 2015-14BTT,

     Plaintiff-Appellant,

v.

61 HOLDINGS, LLC,

     Defendant-Respondent.

_____

        Argued January 7, 2019 – Decided July 12, 2019

        Before Judges Sumners and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. F-024262-16.

        John E. Brigandi argued the cause for appellant (Knuckles Komosinski & Manfro LLP, attorneys; John E. Brigandi, on the briefs).

Stephen McNally argued the cause for respondent (Chiumento McNally, LLC, attorneys; Stephen McNally and Paige M. Bellino, on the briefs).

PER CURIAM

Plaintiff Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity, but solely as Trustee for BCAT 2015-14BTT ("Wilmington Savings"), appeals Judge Edward A. Jerejian's December 7, 2017 and December 12, 2017 orders denying its motion for summary judgment, granting defendant 61 Holdings, LLC's ("61 Holdings") cross-motion for summary judgment, and dismissing the complaint with prejudice. We affirm, substantially for the reasons set forth in Judge Jerejian's thorough written opinion, adding only the following comments.

This case arises from a dispute between Wilmington Savings, holder of a $25,000 line of credit note issued to previous owner Robert Polesovsky ("the borrower") by Fleet National Bank ("Fleet"), and 61 Holdings, third-party purchaser of the property from Wells Fargo Bank ("Wells Fargo"), holder of a note and mortgage given by the prior owner to World Savings Bank, FSB ("World Savings"), in the amount of $220,000.

After the borrower's default, Wells Fargo commenced a foreclosure action and ultimately obtained a judgment against Polesovsky. Wells Fargo was the

2

successful bidder at the sheriff's sale, and thereafter sold the property to 61 Holdings. 61 Holdings recorded its deed with the Bergen County Clerk's Office on August 11, 2016. Wilmington Savings, holder of the other note and mortgage on the property, instituted the instant foreclosure action against 61 Holdings on or about September 1, 2016.

Background

On April 12, 2004, Polesovsky executed a promissory note and mortgage in favor of World Savings Bank, FSB, in the amount of $220,000. The mortgage was secured by the property located on Overpeck Avenue in Ridgefield Park ("the subject property"). World Savings recorded its mortgage on January 27, 2005. Thereafter, World Savings assigned its note and mortgage to Wells Fargo.

On July 2, 2004, the borrower executed a line of credit note and mortgage in favor of Fleet in the amount of $25,000. Fleet's mortgage was also secured by the subject property. Bank of America, N.A., s/b/m[1] Fleet National Bank subsequently assigned the note and mortgage to Wilmington Savings. Wilmington Savings' mortgage was recorded on August 3, 2004.

Although Fleet's loan was recorded first, it was granted second in time and thus Wells Fargo's predecessor had no constructive or actual knowledge of the

---

[1] Successor by merger.

A-1971-17T4

second loan at the time its loan was originated. In that regard, Wells Fargo produced its loan origination file in discovery, which showed the borrower did not disclose that he had taken out a line of credit loan with Wilmington Savings.

On December 15, 2009, Wells Fargo initiated a foreclosure action against the borrower. Neither Wilmington Savings nor Fleet as its predecessor in interest was named as a defendant. After final judgment was entered against the borrower, Wells Fargo bought the property at a sheriff's sale for $100. On or about June 1, 2016, Wells Fargo sold the property to 61 Holdings for $175,000. On August 11, 2016, 61 Holdings recorded its deed with the Bergen County Clerk's Office.

Pertinent to the issues on appeal, before purchasing the property from Wells Fargo, 61 Holdings' title insurance company conducted a title search of the property, which indicated that Wilmington Savings' mortgage remained an open lien. The title company then provided an amended title commitment in connection with the purchase of the property, which omitted Wilmington Savings' mortgage as an exception to its title policy based on an indemnification letter dated November 3, 2015, with respect to the Wilmington Savings' mortgage. Based on the reference to Wilmington Savings' mortgage on both the initial title search and the indemnification letter, Wilmington Savings argues

that 61 Holdings had actual notice of an open lien on the property and therefore should be denied equitable relief. Rejecting that argument, Judge Jerejian found that 61 Holdings justifiably relied on the amended title commitment in its belief that the Wilmington Savings loan did not remain as an open lien against the property.

In contrast, the judge found that Wilmington Savings did know of Wells Fargo's mortgage. The judge drew a negative inference presuming that Wilmington Savings' predecessor had knowledge of Wells Fargo's mortgage, opining that:

> [Wilmington Savings]'s argument that Fleet National had no knowledge of the loan granted by World Savings Bank is a self-serving assertion unsupported by any evidence. The loan granted by World Savings Bank was executed on April 12, 2004, well before [Wilmington Savings'] [m]ortgage[,] which was not executed until July 2, 2004 . . . . [Wilmington Savings] was unable to produce the loan origination file[2] in

---

[2] A loan file, if maintained in the regular course of business, should include an application completed and signed by the borrower and identifying any existing debts, including those secured by a mortgage on the property. Therefore, the court found the borrower would have disclosed Wells Fargo's mortgage given that it was originated approximately three months before the execution of the Wilmington Savings' mortgage.

Wilmington Savings produced only the note, mortgage, assignments of mortgage, notice of intention to foreclose, and screen shots showing the foreclosure charges and the property preservation fees allegedly incurred since the supposed default.

A-1971-17T4

response to [61 Holdings'] request. In a supplemental certification in response to a request made by the court, [Wilmington Savings] certified that it had produced all of the loan documents in its possession and did not have the complete loan origination file. Such a loan origination file would include the application of the borrower . . . [and] would indicate whether the borrower disclosed a prior mortgage or encumbrance to the junior lender, thereby barring the protection of New Jersey's Recording Act. . . . . Accordingly, because [Wilmington Savings] failed to produce the loan file, [61 Holdings] is entitled to a favorable inference that [Wilmington Savings] had actual knowledge of the prior loan at the time of the loan's origination. As a result, equity demands that Wells Fargo's interest be deemed greater than that of [Wilmington Savings].

The judge noted that as Wilmington Savings' predecessor had actual knowledge of Wells Fargo's mortgage, Wells Fargo's mortgage would have priority notwithstanding the fact that Wilmington Savings' mortgage was recorded first. See N.J.S.A. 46:26A-12(b). Beyond this, the court found that Wilmington Savings could not prove a lack of prejudice because its predecessor never had an expectation of having a first lien on the property.

On December 7, 2017, Judge Jerejian entered two orders, one denying Wilmington Savings' motion for summary judgment and the other granting 61 Holdings' cross-motion for summary judgment. In his accompanying written opinion, the judge concluded that (1) Wells Fargo was entitled to equitable subrogation of Wilmington Savings' interest; (2) 61 Holdings was entitled to

6

step into the shoes of Wells Fargo; and (3) 61 Holdings was permitted to foreclose Wilmington Savings' interest in a strict foreclosure action. On December 12, 2017, the judge entered an amended order clarifying that Wilmington Savings' complaint was dismissed with prejudice. This appeal ensued.

### The parties' arguments

On appeal, Wilmington Savings contends that 61 Holdings, as a third-party purchaser with actual knowledge of the outstanding lien on the property, cannot resort to the doctrine of equitable estoppel to gain priority. At the outset, Wilmington Savings contends that 61 Holdings is an ordinary purchaser and not a mortgagee who paid off a senior lien, and thus is not an entity entitled to equitable subrogation as a matter of law. Wilmington Savings contends that because its loan appeared on the initial title commitment obtained by 61 Holdings prior to consummating the sale, 61 Holdings should be found to have affirmatively taken the risk that there was a cloud on the title. Further, with respect to Wells Fargo, Wilmington Savings asserts that it is entitled to priority because its loan was recorded first.

A-1971-17T4

Finally, although raised for the first time on Wilmington Savings' reply, it contends that the trial court abused its discretion in drawing a negative inference against it for failure to produce its loan origination file.

Standard of review

We review a trial court's grant of summary judgment de novo. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

> [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).]

"[S]ummary judgment will be granted if there is no genuine issue of material fact and 'the moving party is entitled to a judgment or order as a matter of law.'" Conley, 228 N.J. at 346 (quoting R. 4:46-2(c)).

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to

resort to the mortgaged premises." Great Falls Bank of Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993); see also Thorpe v. Floremoore Corp., 20 N.J. Super. 34, 37 (App. Div. 1952). ("Since the execution, recording, and non-payment of the mortgage were conceded, a prima facie right to foreclosure was made out."). If a defendant's answer fails to challenge the essential elements of the foreclosure action, a plaintiff is entitled to strike the defendant's answer. Old Republic Ins. Co. v. Currie, 284 N.J. Super. 571, 574 (Ch. Div. 1995).

Absent a genuine issue of fact, we must determine whether the trial court's rulings on legal issues were correct. Walker v. Atl. Chrysler Plymouth, 216 N.J. Super. 255, 258 (App. Div. 1987). We review evidentiary rulings under an abuse of discretion standard while we review the legal conclusions that support the summary judgment ruling de novo. See Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 385 (2010).

The trial court's findings based on an adverse inference

Judge Jerejian determined that Wells Fargo had a basis to assert priority over Wilmington Savings' mortgage based on equitable subrogation. The judge determined subrogation was appropriate in light of the fact that Wilmington Savings' predecessor, Fleet, had actual knowledge of Wells Fargo's mortgage. Thus, Fleet understood that its lien would be subject to the Wells Fargo

9

mortgage, and could not show prejudice because it never had an expectation of having a first priority position.

The judge reached this conclusion after drawing a negative inference as to Wilmington Savings' knowledge of the Wells Fargo mortgage: "[Wilmington Savings'] inability to produce the loan origination file thus raises the inference that exposure of the facts that would be contained therein would be unfavorable to its position." Central to that conclusion was Wilmington Savings' failure to produce its loan origination file, which would have revealed whether the borrower disclosed Wells Fargo's predecessor's loan which had been executed almost three months earlier. That issue in turn was critical to resolution of the priority dispute because, had the application shown the borrower did disclose the Wells Fargo loan, Wells Fargo would enjoy first-place priority notwithstanding the fact that Wilmington Savings' predecessor recorded its mortgage first. See N.J.S.A. 46:26A-12(b).

It is well-settled that "failure of a party to produce before a trial tribunal proof which, it appears, would serve to elucidate the facts in issue, raises a natural inference that the party so failing fears exposure of those facts would be unfavorable to him." State v. Clawans, 38 N.J. 162, 170 (1962) (citing 2 Wigmore on Evidence, § 285 (3d ed. 1940)). This principle applies to civil as

well as criminal trials. Id. at 171(citing 2 Wigmore on Evidence §§285, 290 (3d ed. 1940) (other citations omitted). In this case, whether the borrower disclosed to Fleet as Wilmington Savings' predecessor the existence of the prior loan was a fact uniquely within Wilmington Savings' control. Moreover, no reasonable explanation was provided to explain the non-production of the loan application, a document that is kept in the normal course of business as part of a loan application file, signed by the borrower and identifying any outstanding liens on the property. Under these facts, we find the judge did not abuse his discretion in drawing the inference that Wilmington Savings knew of the prior loan.

Whether Wells Fargo was entitled to equitable subrogation

Relatedly, Wilmington Savings asserts that the trial court erred in finding Wells Fargo's lien had priority, noting that its mortgage was recorded months before that of Wells Fargo's predecessor.

Our scope of review of a trial court's decision to apply an equitable doctrine is limited. Ocwen Loan Services, LLC v. Quinn, 450 N.J. Super. 393, 397 (App. Div. 2016). A decision to apply equitable subrogation is left to the sound discretion of the trial judge, and we will not substitute our judgment for that of the trial judge in the absence of a clear abuse of discretion. Ibid.

New Jersey is a race-notice state with respect to mortgaged properties. See Palamarg Realty Co. v. Rehac, 80 N.J. 446, 454 (1979). In that regard, N.J.S.A. 46:26A-12(b) provides that "[a] claim under a recorded document affecting the title to real property shall not be subject to the effect of a document that was later recorded or was not recorded unless the claimant was on notice of the later recorded or unrecorded document." As a corollary to the rule, parties are generally charged with constructive notice of instruments that are properly recorded. Friendship Manor, Inc. v. Greiman, 244 N.J. Super. 104, 108 (1990).

Despite the general rule prioritizing first-recorded mortgages, New Jersey courts have applied the doctrine of equitable subrogation to ameliorate the harsh consequences of the recording act. See Sovereign Bank v. Gillis, 432 N.J. Super. 36, 44-45 (App. Div. 2013). The doctrine of equitable subrogation is "highly favored in the law." Culver v. Ins. Co. of N. Am., 115 N.J. 451, 456 (1989). It is rooted in principles of equity, compelling "the ultimate discharge of an obligation by the one who in good conscience ought to pay it." US Bank, NA v. Hylton, 403 N.J. Super. 630, 637 (Ch. Div. 2008) (quoting First Union Nat'l Bank v. Nelkin, 354 N.J. Super. 557, 565 (App. Div. 2002)).

"[A] mortgagee who negligently accepts a mortgage without knowledge of intervening encumbrances will subrogate to a first mortgage with priority

over the intervening encumbrances to the extent that the proceeds of the new mortgage are used to satisfy the old mortgage." Inv'rs Sav. Bank v. Keybank, 424 N.J. Super. 439, 443 (App. Div. 2012) (quoting Trus Joist Corp. v. Nat'l Union Fire Ins. Co., 190 N.J. Super. 168, 179 (App. Div. 1983)). Equitable subrogation ensures "that the holders of the intervening encumbrances not be unjustly enriched at the expense of the new mortgagee." Id. at 444 (quoting Trust Joist, 190 N.J. Super. at 179) .

Historically, equitable subrogation has been unavailable to a new lender who has actual knowledge of an intervening second mortgage. Gillis, 432 N.J. Super. at 45. More recently, however, courts have rejected the historical approach, finding that "the lender's actual knowledge of an intervening loan is not a bar to its reliance upon equitable principles of priority." Id. at 49-50. As we noted in Gillis, "[a]s we recently highlighted in [Inv'rs Sav. Bank,] the Third Restatement has repudiated the traditional majority approach and recommends that subject to certain other factors, 'subrogation can be granted even if the payor had actual knowledge of the intervening interest.'" Id. at 46 (quoting Restatement (Third) of Property: Mortgages, § 7.6 cmt. e, illus. 26 (Am. Law Inst. 1997)).

Under the facts of this case, however, there is no need to directly address the issue of the actual-knowledge bar. That is so because, as the trial judge found, Fleet's mortgage was not an "intervening" mortgage as is the typical scenario in cases involving equitable subrogation. Rather, there is no dispute that although it was first-recorded, Wells Fargo's predecessor World Savings' loan was executed months before. Thus, Judge Jerejian determined:

> [W]hile [Wilmington Savings' mortgage] was recorded first, it was granted second in time and thus Wells Fargo's predecessor in interest had no constructive or actual knowledge of this second loan at the time its loan was originated. In fact, [61 Holdings] has produced evidence, . . . demonstrating that [borrower] did not disclose the [Wilmington Savings'] [m]ortgage. Further, even if Wells Fargo's predecessor in interest had knowledge of the Fleet National loan, in the context of replacement, "the lender's actual knowledge of an intervening loan is not a bar to its reliance upon equitable principles of priority." [Gillis], 432 N.J. Super. at 49-50. As the World Savings Bank loan was utilized to pay off the satisfied mortgage, it was reasonable for World Savings Bank to rely upon traditional, equitable principles of priority and expect that its interest would be in "first place." Unjust enrichment would thus result if the interest held by [Wilmington Savings] were to be vaulted past the interest held by [61 Holdings] solely by virtue of it being first to record. Such a result would contradict the very purpose behind the doctrine of equitable subrogation.
>
> [(Emphasis added).]

We conclude that the judge's factual findings are amply supported by the record and his legal conclusions are unassailable. We therefore find that the judge did not abuse his discretion in applying the doctrine of equitable subrogation to accord Wells Fargo a first-priority position.

61 Holdings status as an innocent third-party purchaser

We are similarly unpersuaded by Wilmington Savings' argument that, for the purposes of equitable subrogation, 61 Holdings is not entitled to step into the shoes of Wells Fargo. Wilmington Savings contends that 61 Holdings lost its status as an innocent purchaser by virtue of its actual knowledge that Wilmington Savings' mortgage remained as an open lien when it purchased the property. In that regard, Wilmington Savings notes that 61 Holdings attached a title commitment and indemnification letter from a title guaranty company in support of its cross-motion, both of which reference the open mortgage. Wilmington Savings argues that these documents "clearly demonstrate that 61 Holdings took the calculated risk to purchase the property, despite having actual knowledge of Wilmington Savings' mortgage, by relying upon the indemnification letter of its title insurer." Wilmington Savings reasons that "such deliberate actions are not worthy of equitable relief, nor should

[d]efendant be rewarded under . . . equitable subrogation for willfully ignoring [p]laintiff's mortgage."

As did the trial judge, we reject this argument. In support of the cross-motion, Michael S. Ryan, President of 61 Holdings, certified that:

> In conjunction with the closing of the Property, Elite Title Group, LLC issued an amended title commitment to 61 Holdings dated June 7, 2016, that referenced [p]laintiff's [m]ortgage but indicated that same was being "omitted based upon the receipt of [an] indemnification letter."
>
> 61 Holdings relied on the Amended Title Commitment and accompanying indemnification letter at the time of closing.
>
> It was 61 Holdings' understanding that based upon the Amended Title Commitment, there were no title issues affecting its priority or interest in the property.

The judge found that 61 Holdings justifiably relied on the title company's assessment that Wilmington Savings did not have a valid claim to title, and therefore remained an innocent purchaser. We agree.

Notably, although the actual knowledge of a purchaser might in another factual scenario bear on its status as an innocent purchaser, that knowledge is different than the actual knowledge of the mortgagees at the time they accepted the underlying mortgages. In that regard, 61 Holdings' entitlement to subrogation is wholly derivative of Wells Fargo's entitlement to subrogation.

16

That is so because the issue whether equitable subrogation is appropriate must be evaluated from the standpoint of the entities that made the loans at the time they made the loans. Thus, the priority rights vis-à-vis Wilmington Savings and Wells Fargo, albeit not yet judicially determined, were fixed as of the date Wells Fargo foreclosed the property.

As Judge Jerejian correctly opined:

> 61 Holdings' ability to step into the shoes of Wells Fargo Bank is unaffected by its knowledge of [Wilmington Savings'] loan. While the court is unpersuaded that in all instances the focus must be on the knowledge of a party's predecessor in interest and that no intervening knowledge could prevent a party from stepping into the shoes of its predecessor, in the instant case 61 Holdings remains an innocent purchaser.

As the judge found, Wells Fargo's predecessor held a first-priority lien at the time its loan originated. Therefore, although 61 Holdings may have been aware of the Wilmington Savings loan, that awareness does not serve to eradicate Wells Fargo's entitlement to its priority position. We also agree that 61 Holdings justifiably relied on the assessment of its title company to remove Wilmington Savings mortgage as an open lien on the property. Thus, as the judge concluded, 61 Holdings, as an innocent purchaser of the property, is granted the same rights as those held by its predecessor in interest Wells Fargo.

Strict foreclosure

Finally, we reject Wilmington Savings' challenge to Judge Jerejian's holding that as an innocent purchaser, 61 Holdings retains the right to prosecute a strict foreclosure action to extinguish Wilmington Savings' interest. A strict foreclosure action is "a procedure designed to extinguish the equitable right of redemption." Sears v. Camp, 124 N.J. Eq. 403, 407 (1938). The process is used when by an oversight, a party is not joined in a prior foreclosure action and it would be unduly onerous to require the foreclosing lender to re-prosecute the entire foreclosure action. See id. at 412-413. Strict foreclosure allows the lender to prosecute against the missed parties only.

> [I]t is an ancient field of equity jurisprudence to relieve against the consequences of accident and mistake of fact – not to mention its jurisdiction over equitable titles and interests created by mortgage – where, in the furtherance of justice, that course may be taken without disregard of an equal or superior equity, particularly where one has thereby acquired, at the expense of the complaining party, a legal right which in good conscience he should not retain. It is the general rule that a deed from the purchaser at a foreclosure sale to a third person transfers to the grantee all the title and rights of the original purchaser, subject to any outstanding equity of redemption.
>
> [Id. at 412.]

See also Citicorp Mortgage, Inc. v. Pessin, 238 N.J. Super. 606, 607 (App. Div. 1990) (holding that a complainant in a foreclosure action who purchases in good faith at the foreclosure sale is entitled to file a complaint to force an outstanding junior lienor to redeem its mortgage or be foreclosed of the equity of redemption).

As Judge Jerejian correctly concluded, as in Pessin, 61 Holdings is an innocent purchaser of the property, having purchased it from Wells Fargo, the foreclosing mortgagee. It is irrefutable that just as Wells Fargo as the priority lienholder would have the ability to bring a strict foreclosure action against Wilmington Savings if it still held title, 61 Holdings as an innocent purchaser enjoys that same right.[3]

To the extent we have not specifically addressed any arguments raised by the parties, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] The issue of the mortgage's discharge is not before us because, as the judge noted, a strict foreclosure action must be initiated by a separate complaint.