38 A.3d 638 (2012)
424 N.J. Super. 439
INVESTORS SAVINGS BANK, Plaintiff-Respondent,
v.
KEYBANK NATIONAL ASSOCIATION, Defendant-Appellant, and
Denis Kelliher, Defendant.
Docket No. A-0404-10T2
Superior Court of New Jersey, Appellate Division.
Submitted October 31, 2011.
Decided March 12, 2012.
*639 Donna L. Thompson, Allenwood, attorney for appellant.
Chiumento McNally, Cherry Hill, attorneys for respondent (Stephen McNally, on the brief).
*640 Before Judges PARRILLO, ALVAREZ and SKILLMAN.
The opinion of the court was delivered by
SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
This appeal requires us to determine whether the holder of a mortgage that secures a loan used to discharge a prior mortgage is equitably subrogated to the rights of the prior mortgagee and thus has priority over the lien of a judgment creditor that recorded its judgment before the new mortgage was placed on the property. We conclude that such a refinancing mortgagee is ordinarily entitled to the same priority as the original mortgagee even though it negligently failed to discover the lien of the intervening judgment creditor before closing.
Defendant Keybank lent substantial amounts of money to defendant Denis Kelliher in connection with his operation of a motor home business. Kelliher engaged in extensive fraudulent activity to obtain those loans. This fraudulent activity resulted in Kelliher's conviction for various federal crimes and a sentence of imprisonment.
Keybank brought suit against Kelliher, which resulted in a judgment in its favor in the amount of $27,457,874. Keybank recorded this judgment on September 30, 2008.
Before this judgment was entered and recorded, Kelliher had obtained a construction loan from 1st Constitution Bank in the amount of $1,338,750. This loan was secured by a mortgage on Kelliher's residential property in Toms River, which was recorded on January 23, 2008.
In the summer of 2008, Kelliher sought to refinance his loan from 1st Constitution Bank with a loan from Investors Mortgage Company, which was the predecessor to plaintiff Investors Savings Bank (ISB). In his application for this loan, Kelliher gave false answers to a series of questions concerning his financial condition and the pendency of litigation against him. Thus, in response to the question, "Are you presently delinquent or in default on any federal debt or any other loan, mortgage, financial obligation, bond or loan guarantee?" Kelliher answered "No." In response to the question, "Are you a party to any lawsuit?" Kelliher also answered "No."
ISB retained Quality Closing Services to act as title agent and obtain a title policy for a new mortgage on Kelliher's Toms River property to secure this loan. On August 1, 2008, Quality ran a title search that did not reveal any judgments against Kelliher (Keybank's judgment had not yet been recorded.)
On October 3, 2008, Quality conducted the closing on the ISB loan to Kelliher secured by the mortgage on his Toms River property. At the closing, Kelliher executed an affidavit of title with a handwritten notation, "No judgments per attached search," with a copy of the August 1st judgment search attached. No rundown search, which would have brought the August 1st search up to date at the closing, was conducted.
ISB disbursed $1,330,000 at the closing, which was used to pay off the 1st Constitution Bank construction loan. Because the ISB loan was insufficient to cover the full outstanding balance of the 1st Constitution loan, Kelliher also paid $54,107.64 of his own money to discharge his full indebtedness to 1st Constitution and pay the closing costs.
ISB's mortgage on Kelliher's Toms River property was recorded on October 21, 2008. On December 30, 2008, Keybank's counsel informed ISB of its recorded *641 judgment with priority over ISB's mortgage, which Quality confirmed by a search conducted on January 6, 2008.
After becoming aware of the Keystone judgment that had been recorded before its mortgage, ISB brought this action seeking a declaration that, under the doctrine of equitable subrogation, its mortgage is entitled to priority over Keybank's judgment. ISB's complaint joined Kelliher as a defendant in the action[1] and asserted other claims against Keybank that are not involved in this appeal.
After the completion of discovery, the case was brought before the trial court by cross-motions for summary judgment. The trial court concluded that, under the doctrine of equitable subrogation, ISB's mortgage was entitled to priority over Keybank's previously recorded judgment. In reaching this conclusion, the court stated:
... Had this loan not taken place [Keybank] would not have been in any better or worse off position at that point in time. There was a first mortgage there,... that mortgage that was paid off would have still been there at that point in time, and this $27 million Judgment would have been behind it.
Accordingly, the court entered judgment determining that the Keybank judgment is "deemed [s]ubordinated" to the ISB mortgage. Keybank appeals from this judgment.
Under the doctrine of equitable subrogation, "a mortgagee who negligently accepts a mortgage without knowledge of intervening encumbrances will subrogate to a first mortgage with priority over the intervening encumbrances to the extent that the proceeds of the new mortgage are used to satisfy the old mortgage." Trus Joist Corp. v. Nat'l Union Fire Ins. Co., 190 N.J.Super. 168, 179, 462 A.2d 603 (App.Div.1983), rev'd on other grounds, 97 N.J. 22, 477 A.2d 817 (1984). "In that situation, the new mortgagee by virtue of its subrogated status can enjoy the priority afforded the old mortgagee." First Union Nat'l Bank v. Nelkin, 354 N.J.Super. 557, 565, 808 A.2d 856 (App.Div.2002). "This result is reached so that the holders of the intervening encumbrances not be unjustly enriched at the expense of the new mortgagee." Trus Joist, supra, 190 N.J.Super. at 179, 462 A.2d 603.[2] However, in this State the new mortgagee "is not entitled to subrogation, absent an agreement or formal assignment, if it possesses actual knowledge of the prior encumbrance." Nelkin, supra, 354 N.J.Super. at 565-66, 808 A.2d 856.
The prototypical situation in which a court will apply the doctrine of equitable subrogation is where a mortgage with priority over other liens on a property is refinanced by a new mortgage used to pay off the outstanding balance on the old mortgage. As explained by a leading commentary in the field of real estate finance law:
By far the most important context in which subrogation arises with a refinancing mortgage occurs when there are intervening junior liens on the property, and the refinancing mortgagee asserts *642 subrogation to gain priority over them. The basis for subrogation in this context is the lender's justified expectation of receiving security.
....
[M]ost cases have held that the junior lienors are not prejudiced [by the refinancing mortgage] unless they have changed their position in reliance on extinguishment of the debt [to the old mortgagee]. Where the junior lienor occupies the same position as before the prior lien was paid and discharged, to deny subrogation and permit the lienor to advance would give it a windfall advantage at the expense of the justifiable expectation of the [new] lender. This would defeat the purpose of subrogation, which is to prevent unjust enrichment and grant an equitable result between the parties.
[Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law, § 10.6, at 22-23, 25-26 (5th ed. 2007) (footnotes omitted).]
The trial court properly recognized that, under the doctrine of equitable subrogation, ISB's mortgage on Kelliher's Toms River property was entitled to priority over Keybank's judgment. It is undisputed that the 1st Constitution Bank mortgage, which was placed on the property long before Keybank obtained its judgment against Kelliher, had priority over that judgment. When ISB lent Kelliher $1,330,000, which was used to pay off the 1st Constitution mortgage, Keybank was in no worse position than before this loan was made. ISB's loan to Kelliher, and the mortgage securing that loan, simply took the place of 1st Constitution Bank's loan and mortgage, and Keybank had the same right as before this transaction to execute upon whatever equity Kelliher would have in the property after payment of the ISB mortgage. Conversely, if ISB's priority position with respect to the $1,330,000 it lent to Kelliher were not recognized, Keystone would be unjustly enriched by the discharge of the 1st Constitution Bank mortgage that had priority over its judgment. Consequently, unless ISB had actual knowledge of Keybank's recorded judgment when it closed on the loan to Kelliher and the mortgage on his property, see Nelkin, supra, 354 N.J.Super. at 565-66, 808 A.2d 856, that mortgage has priority over the judgment.
The trial court correctly concluded that there was no evidence from which a trier of fact could find that ISB had actual knowledge of Keybank's judgment when it closed on the loan to Kelliher and the mortgage to secure that loan. That judgment was obtained on September 25, 2008, and recorded on September 30, 2008, only three days before ISB closed on its loan to Kelliher. Kelliher gave false answers both before and again at the closing to ISB's questions concerning the existence of any judgments or litigation against him. Moreover, ISB submitted certifications by its employees and agents involved in the transaction attesting to their lack of knowledge of the Keybank judgment. Although Keybank conducted discovery prior to the case being brought before the trial court by cross-motions for summary judgment, it failed to uncover any evidence that could cast doubt on ISB's claim that it did not know of the Keybank judgment when it closed on the loan to Kelliher and mortgage upon his property. Therefore, the exception to the equitable subrogation doctrine recognized in this State when a new mortgagee has actual knowledge of a prior encumbrance does not apply to this case.[3]
*643 Keybank argues that the trial court erred in concluding that ISB should be equitably subrogated to 1st Constitution Bank's mortgage on Kelliher's property because it was "grossly negligent" in failing to discover Keybank's recorded judgment. Although ISB's title agent, Quality, was undoubtedly negligent in failing to conduct a continuation search before the closing, we question whether that negligence should be characterized as "gross," especially since it is unclear whether such a search would have discovered the Keybank judgment, which was recorded only three days before the closing.
In any event, our cases indicate that the holder of a new mortgage, which lent money used to pay off a prior mortgagee, may be equitably subrogated to the rights of the old mortgagee to the extent of the loan even though it was negligent in failing to discover an intervening lien, without consideration of the degree of that negligence. See, e.g., Nelkin, supra, 354 N.J.Super. at 565, 808 A.2d 856; First Fid. Bank v. Travelers Mortg. Servs., Inc., 300 N.J.Super. 559, 565, 693 A.2d 525 (App.Div.1997); Metrobank for Sav., FSB v. Nat'l Cmty. Bank, 262 N.J.Super. 133, 143-44, 620 A.2d 433 (App.Div.1993); Kaplan v. Walker, 164 N.J.Super. 130, 138-39, 395 A.2d 897 (App.Div.1978). Indeed, our former Court of Chancery rejected an argument similar to the one advanced by Keybank:
. . . What logical basis can there be for attempting to differentiate the rule as between cases of negligence and cases of gross negligence. If relief is to be denied on the theory of complainant's not being entitled to relief when he has been guilty of negligence, then any negligence should bar. If such is not the theory, then why should even gross negligence bar? And how and where can such a line be drawn?
[Cliffside Park Title & Guar. & Tr. Co. v. Progressive Theatres, Inc., 122 N.J. Eq. 109, 119-20, 192 A. 520 (Ch.1937).]
We agree with this observation and conclude that the degree of ISB's negligence in failing to discover Keybank's judgment is irrelevant in the absence of a showing that Keybank was prejudiced by ISB's refinancing of the 1st Constitution Bank mortgage.
Keybank argues that the application of the doctrine of subrogation to give ISB's mortgage priority over its judgment would result in a taking of its property, in violation of the Takings Clause of the United States Constitution, U.S. Const., amend. V. This argument was not presented to the trial court and therefore is not properly before us. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 231, 300 A.2d 142 (1973). In any event, the argument is clearly without merit. R. 2:11-3(e)(1)(E). We recognize that a taking may occur if a *644 judicial decision articulates a new rule of law that alters a clearly established right of private property. See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., ____ U.S. ____, ____, 130 S.Ct. 2592, 2612-13, 177 L.Ed.2d 184, 208 (2010). However, there is nothing novel in the application of the doctrine of equitable subrogation to give the lien of a mortgagee in the position of ISB priority over the lien of a judgment creditor such as Keybank. Indeed, our courts have applied the doctrine in similar circumstances for nearly a century. See Inst. Bldg. & Loan Ass'n v. Edwards, 81 N.J. Eq. 359, 86 A. 962 (Ch. 1913). Therefore, the judgment in this case does not raise a Takings Clause issue.
Affirmed.
NOTES
[1] The record does not indicate what disposition, if any, was made of the complaint against Kelliher.
[2] Even if an intervening encumbrancer would not be unjustly enriched by giving it priority over the new mortgagee, equitable subrogation may be appropriate if the intervening encumbrancer "acted fraudulently." Nelkin, supra, 354 N.J.Super. at 566, 808 A.2d 856. Because we conclude that Keybank would be unjustly enriched if its judgment were given priority over ISB's mortgage, there is no need to consider this alternative basis for application of the doctrine of equitable subrogation.
[3] Because there is no evidence from which it could be found that ISB had actual knowledge of Keybank's judgment when it closed on the loan to Kelliher and the mortgage securing that loan, there is no need to decide whether New Jersey should follow the view of the Third Restatement of Property that even actual knowledge of an intervening recorded lien should not defeat the right to equitable subrogation in the absence of a showing that the intervening lienor was prejudiced by the refinancing of the original mortgage. See Restatement (Third) of Prop. Mortgages § 7.6 comment. (e) (1997) ("Under this Restatement. . . subrogation can be granted even if the payor had actual knowledge of the intervening interest.") A number of other jurisdictions have adopted this view of the doctrine of equitable subrogation. See, e.g., Suntrust Bank v. Riverside Nat'l Bank of Fla., 792 So.2d 1222, 1225-27 (Fla.Dist.Ct.App.2001); Bank of N.Y. v. Nally, 820 N.E.2d 644, 652-54 (Ind.2005); Am. Sterling Bank v. Johnny Mgmt. LV, Inc., 245 P.3d 535, 539 (Nev.2010); Sheppard v. Interbay Funding, LLC, 305 S.W.3d 102, 108 (Tex.App.2009); Bank of Am., N.A. v. Prestance Corp., 160 Wash.2d 560, 160 P.3d 17, 21-19 (2007).