**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0478-18T4

DITECH FINANCIAL, LLC,

    Plaintiff-Appellant,

v.

CAROL N. MIGLIACCIO,
WELLS FARGO BANK, NA,
PORTFOLIO RECOVERY
ASSOCIATES, VINCENZO
TRANI, SOKOL, BEHOT
& FIORENZO, and STATE
OF NEW JERSEY,

    Defendants,

and

THOMPSON REALTY COMPANY
OF PRINCETON, INC.,

    Defendant-Respondent.

_____

Submitted January 29, 2020 – Decided February 11, 2020

Before Judges Haas and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. F-052561-14.

Chiumento McNally, LLC, attorneys for appellant (Thomas W. Sweet, on the briefs).

Roselli Griegel Lozier & Lazzaro, PC, attorneys for respondent (Steven W. Griegel, on the brief).

PER CURIAM

Plaintiff Ditech Financial LLC (Ditech) appeals from a Chancery Division order granting summary judgment to defendant Thompson Realty Company of Princeton (Thompson), and giving Thompson's 2006 judgment lien priority over Ditech's 2004 mortgage. We affirm, substantially for the reasons set forth in Judge Margaret Goodzeit's comprehensive and well-reasoned opinion of February 22, 2017.[1]

The essential facts are undisputed. In 2001, Carol Migliaccio borrowed $252,700 from IndyMac Bank, F.S.B. (IndyMac) to finance the purchase of a residential property in Somerset Township. IndyMac secured the loan with a purchase money mortgage (mortgage) and recorded the mortgage in the first

---

[1] The February 22, 2017 order was amended by two orders dated March 29, 2017 which corrected a clerical error to confirm Thompson was entitled to summary judgment on count four (versus count five), of Ditech's second amended complaint, and returned the matter to the Office of Foreclosure.

position of priority with the Somerset County Clerk's Office. In March 2004, Migliaccio obtained a non-purchase money mortgage from IndyMac (refinancing mortgage) and refinanced the 2001 mortgage. On April 20, 2004, the mortgage was discharged and properly recorded in Somerset County. However, on May 4, 2004, IndyMac's title agent erroneously recorded the refinancing mortgage with the Mercer County Clerk's Office. It was not until September 20, 2011 that the refinancing mortgage was correctly recorded with the Somerset County Clerk's Office. Through a series of assignments, Ditech became the holder of the refinancing mortgage.

On April 21, 2006, Thompson obtained a judgment against Migliaccio. Thompson properly recorded the judgment in Somerset County.

In 2014, Ditech filed a complaint against Migliaccio to foreclose upon the refinancing mortgage. In 2016, Ditech filed a second amended complaint naming various defendants, including Thompson.[2] Thompson and Ditech filed cross motions for summary judgment, seeking priority over the other party's lien. On February 22, 2017, Judge Goodzeit granted Thompson partial summary judgment and declared Thompson's judgment lien superior to Ditech's mortgage. Her order declared the refinancing mortgage "null and void as against the

_____

[2] No other named defendants are involved in the instant appeal.

Thompson [j]udgment" and confirmed the Thompson judgment "has priority over said mortgage." Judge Goodzeit also granted Ditech partial summary judgment to reform its refinancing mortgage to reflect a correct county designation for recording purposes.

On appeal, Ditech argues that the trial court erred by failing to apply at least one of the equitable doctrines of subrogation, replacement or modification in Ditech's favor. We disagree.

Priorities are generally governed in New Jersey by recording statutes, N.J.S.A. 46:26A-1 to -12. Sovereign Bank v. Gillis, 432 N.J. Super. 36, 43 (App. Div. 2013). The underlying purpose of the New Jersey Recording Act (Recording Act) is "to compel the recording of instruments affecting title, for the ultimate purpose of permitting purchasers to rely upon the record title and to purchase and hold title . . . with confidence." Palamarg Realty Co. v. Rehac, 80 N.J. 446 (1979) (quoting Donald B. Jones, The New Jersey Recording Act— A Study of its Policy, 12 Rutgers L. Rev. 328 (1957)). The Recording Act provides, in pertinent part, that "[a]ny recorded document affecting the title to real property is . . . notice to all subsequent . . . mortgagees . . . of the execution of the document recorded and its contents." N.J.S.A. 46:26A-12(a).

New Jersey is a "race-notice" state, meaning that when two parties compete for priority over each other's lien, "the party that recorded its lien first will normally prevail, so long as that party did not have actual knowledge of the other party's previously-acquired interest." Sovereign, 432 N.J. Super. at 43. (citing Cox. v. RKA Corp., 164 N.J. 487, 496 (2000)). "As a corollary to that rule, parties are generally charged with constructive notice of instruments that are properly recorded." Cox, 164 N.J. at 496. "In the context of the race notice statute, constructive notice arises from the obligation of a claimant of a property interest to make reasonable and diligent inquiry as to existing claims or rights in and to real estate." Friendship Manor, Inc. v. Greiman, 244 N.J. Super. 104, 108 (App. Div. 1990). Typically, a subsequent mortgagee "will be bound only by those instruments which can be discovered by a 'reasonable' search of the particular chain of title." Palamarg, 80 N.J. at 456. These principles, however, are subject to certain equitable concerns. Sovereign Bank, 432 N.J. Super. at 44.

"An exception to the normal 'race-notice' determination of mortgage priorities can occur when a third party advances money to pay off a mortgage." Ibid. (citing Metrobank for Sav., FSB v. Nat'l Cmty. Bank, 262 N.J. Super. 133, 143-44 (App. Div. 1993); Trus Joist Corp. v. Nat'l Union Fire Insurance Co., 190 N.J. Super. 168, 179 (App. Div. 1983), rev'd on other grounds, 97 N.J. 22

5

(1984); <u>Equity Sav. & Loan Ass'n v. Chicago Title Ins. Co.</u>, 190 N.J. Super. 340, 342 (App. Div. 1983)). On occasion, our courts have utilized the doctrine of equitable subrogation to allow a third-party lender "to inherit, in full or in part, the original lien position of the mortgage that it paid off," even if another lien arose in the interim. <u>Ibid.</u> (citing <u>Inv'rs Sav. Bank v. Keybank Nat'l Ass'n</u>, 424 N.J. Super. 439, 443 (App. Div. 2012)). Then, "the new mortgagee by virtue of its subrogated status can enjoy the priority afforded the old mortgagee." <u>Ibid.</u> (quoting <u>Inv'rs Sav. Bank</u>, 424 N.J. Super. at 443-44). "This result is reached so that the holders of the intervening encumbrances [are not] unjustly enriched at the expense of the new mortgagee." <u>Inv'rs Sav. Bank</u>, 424 N.J. Super. at 443-44 (quoting <u>Trus Joist Corp.</u>, 190 N.J. Super. at 179). Further, the doctrine of equitable subrogation has been applied to protect the priority of a new mortgagee who has advanced monies to pay off a prior mortgage on the mistaken belief there was no intervening lien. <u>See</u> <u>UPS Capital Bus. Credit v. Abbey</u>, 408 N.J. Super. 524 (Ch. Div. 2009).

On appeal, Ditech advances the argument that it should enjoy priority over Thompson's judgment based, in part, on the doctrine of equitable subrogation. We are not convinced.

A-0478-18T4

Firstly, Thompson's lien is not an intervening lien; it was docketed two years after both IndyMac loans were disbursed. More importantly, by 2006, the 2001 IndyMac mortgage was discharged of record. Because the 2004 refinancing mortgage was not recorded in Somerset County until 2011, there was no legally effective notice of this lien in Somerset County's land records in 2006.

As Judge Goodzeit aptly stated:

> Here, the [judgment] lien is not [an] intervening lien in the sense contemplated by the doctrine of equitable subrogation, as it was docketed years after both Indy[M]ac loans were disbursed. Thus, it is questionable that such a doctrine would even apply on the facts presented to the [c]ourt . . . .
>
> Foremost, no intervening lien existed for the new mortgagee [IndyMac] to have known about here because defendant recorded its judgment lien in 2006, years after the 2001 and 2004 loans were disbursed.
>
> The [c]ourt emphasizes that both the original 2001 Indy[M]ac loan and the 2004 Indy[M]ac [r]efinancing loan . . . came into existence prior to the 2006 Thompson [j]udgment . . . . [T]he 2001 and 2004 loans would have priority if legally effective notice existed . . . . However, [in 2006] . . . no legally effective notice existed as to either of the Indy[M]ac loans . . . . With no valid notice, Ditech's position necessarily fails.
>
> [(Fifth alteration in original).]

A-0478-18T4

Even if Thompson's lien was considered an intervening lien (which notion Judge Goodzeit properly rejected), it would appear equitable subrogation does not apply here, where the same lender is seeking to succeed to the priority of one of its own loans. As the Restatement (Third) of Property: Mortgages (Am. Law Inst. 1997) (Third Restatement) informs, "[o]bviously subrogation cannot be involved unless the second loan is made by a different lender than the holder of the first mortgage; one cannot be subrogated to one's own previous mortgage." Third Restatement § 7.6, cmt. e. Accordingly, Ditech's claim of priority on the basis of this equitable theory is unavailing.

Ditech also contends its lien is entitled to priority over Thompson's judgment due to equitable principles of replacement and modification. Again, we are not persuaded.

Pursuant to Section 7.3 of the Third Restatement, "[w]here a mortgage loan is refinanced by the same lender, a mortgage securing the new loan may be given the priority of the original mortgage under the principles of replacement and modification of mortgages." Further, Section 7.3(a) of the Third Restatement provides as to replacement:

> (a) If a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor, except

(1) to the extent that any change in the terms of the mortgage or the obligation it secures is materially prejudicial to the holder of a junior interest in the real estate, or

(2) <u>to the extent that one who is protected by the recording act acquires an interest in the real estate at a time that the senior mortgage is not of record.</u>

[(Emphasis added).]

Moreover, subsections (b) and (c) of Section 7.3 provide as to modification:

(b) If a senior mortgage or the obligation it secures is modified by the parties, the mortgage as modified retains priority as against junior interests in the real estate, except to the extent that the modification is materially prejudicial to the holders of such interests and is not within the scope of a reservation of right to modify as provided in [s]ubsection (c).

(c) If the mortgagor and mortgagee reserve the right in a mortgage to modify the mortgage or the obligation it secures, the mortgage as modified retains priority even if the modification is materially prejudicial to the holders of junior interests in the real estate, except as provided in [s]ubsection (d).

In <u>Sovereign</u>, when discussing the equitable doctrines of "replacement" and "modification," we concluded that if a lender holding a priority lien replaces it with a new mortgage through a refinancing, this replacement lien is entitled to priority regardless of the lender's knowledge of other liens. <u>Sovereign</u>, 432

9

N.J. at 47. However, we cautioned that when a court is asked to apply principles of replacement and modification, "the critical question of priority must revolve around whether the junior lienor . . . has been materially prejudiced." Id. at 50.

Importantly, the refinancing mortgage was "not of record" in Somerset County when Thompson acquired and docketed its 2006 judgment. Furthermore, the record shows Thompson had no knowledge, constructive or actual, of Ditech's refinancing mortgage because the underlying 2001 mortgage was discharged in 2004 and the discharge was properly recorded in Somerset County. Thus, Judge Goodzeit correctly found Thompson was entitled to the protections of the recording act, consistent with Section 7.3(a)(2) of the Third Restatement. As the judge explained, "the Thompson judgment cannot be branded as an intervening lien" and "an exception to [Ditech] retaining priority clearly exists here under the Restatement's approach to the extent that one who is protected by the recording act [such as Thompson] acquires an interest in the real estate at a time that the senior mortgagee is not of record." (Second alteration in original). Referencing Section 7.3(a), comment b, of the Third Restatement, Judge Goodzeit noted this approach "recognizes that recordation of the new [refinancing mortgage] is an element required to retain priority."

Accordingly, she correctly found "the recording statute trumps Ditech's bold claim that equity would allow it to be given priority in this case."

Lastly, Ditech's argument that it is entitled to priority over Thompson on the theory that the refinancing mortgage modified the 2001 mortgage is not persuasive. Judge Goodzeit correctly found the refinancing mortgage was not a mere "modification" of the 2001 mortgage. N.J.S.A. 46:9-8.1(d)(1) defines "modification," in part, to mean: "[w]ith respect to a mortgage loan other than a line of credit, a change in the interest rate, due date or other terms and conditions of a mortgage loan except an advance of principal." As Judge Goodzeit observed, a "modification transaction" occurs when "[n]o money is advanced by the lender." See Grant S. Nelson and Dale A. Whitman, Adopting Restatement Mortgage Subrogation Principles: Saving Billions of Dollars for Refinancing Homeowners, 2006 B.Y.U. L. Rev. 305 (2006). Yet, in the fifth count of its second amended complaint, Ditech admitted "[t]he proceeds given to . . . Migliaccio for [the refinancing mortgage] were used to pay off a mortgage given to IndyMac . . . dated January 26, 2001." Accordingly, Ditech's reliance on the equitable doctrine of modification is misplaced.

"Because equitable remedies are largely left to the judgment of the court, which has to balance the equities and fashion a remedy, such a decision will be

reversed only for an abuse of discretion." <u>Customers Bank v. Reitnour Inv. Props., LP</u>, 453 N.J. Super. 338, 348 (App. Div. 2018). We find no such abuse of discretion here. Further, our review of a grant of summary judgment is de novo, applying the same standards that governed the trial court. <u>Henry v. N.J. Dep't of Human Servs.</u>, 204 N.J. 320, 330 (2010). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to judgment as a matter of law." <u>R.</u> 4:46-2. Guided by these principles, we perceive no basis to disturb Judge Goodzeit's February 22, 2017 decision.

To the extent not discussed here, Ditech's remaining arguments are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-0478-18T4